1           UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF FLORIDA
2                  MIAMI DIVISION
            CASE NO. 17-cr-20604-CMA
3

4    UNITED STATES OF AMERICA,        Miami, Florida

5              Plaintiff,             December 14, 2020

6         vs.                         9:40 a.m. to 10:25 a.m.

7    LUIS ANDRES JILON ROMO,          Courtroom 12-2

8              Defendant.             (Pages 1 to 29)

9    ─────────────────────────────────────────────

10                    SENTENCING
          BEFORE THE HONORABLE CECILIA M. ALTONAGA,
11              UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12
     FOR THE GOVERNMENT:    ROBERT J. EMERY, ESQ.
13                          Assistant United States Attorney
                            99 NE 4th Street, Suite 700
14                          Miami, FL 33132-2131
                            (305) 961-9000
15                          robert.emery@usdoj.gov

16
     FOR THE DEFENDANT:     DAVID ANTHONY NUNEZ, ESQ.
17                          Meyer & Nunez, P.A.
                            150 West Flagler Street, Suite 2700
18                          Miami, FL 33130
                            (305) 722 - 9898
19                          david@nunez-law.com

20
     Also Present:          Alex Seraphin, USPO
21                          Consuela Burrahca, Interpreter

22   REPORTED BY:           STEPHANIE A. McCARN, RPR
                            Official Court Reporter
23                          400 North Miami Avenue
                            Twelfth Floor
24                          Miami, Florida 33128
                            (305) 523-5518
25                          Stephanie_McCarn@flsd.uscourts.gov

<pre>
 1                      I N D E X

 2                       WITNESSES

 3
     WITNESSES FOR THE GOVERNMENT:                    Page
 4                                                      --

 5


 6
     WITNESSES FOR THE DEFENDANT:                     Page
 7                                                      --

 8


 9   EXHIBITS IN EVIDENCE        PRE     MARKED     ADMITTED

10    Government's Exhibit No.    --       --          --

11    Defendant's Exhibit No.     --       --          --

12

13

14

15                     MISCELLANEOUS

16                                                    Page
     Proceedings.......................................   4
17   Court Reporter's Certificate.....................  30

18

19

20

21

22

23

24

25
</pre>

```
 1              (The following sentencing held at 9:40 a.m.)

 2              THE COURT:  Good morning.  United States and Luis

 3    Andres Jilon Romo.  I see we have Mr. Emery by video.

 4              MR. EMERY:  Yes, Your Honor, good morning.

 5              THE COURT:  Good morning.

 6              We have the Defendant, Defense Counsel and court

 7    interpreter here.

 8              Mr. Nunez, good morning.

 9              MR. NUNEZ:  Good morning, Your Honor.  May it please

10    the Court, David Nunez on behalf of Mr. Luis Andres Jilon Romo.

11    Thank you.

12              THE COURT:  Thank you.  Please be seated.

13              And good morning, Mr. Romo.

14              THE DEFENDANT:  Good morning.

15              THE COURT:  Mr. Romo, we are here for your sentencing

16    hearing.  Have you had the opportunity of reviewing the

17    Presentence Investigation Report?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  Thank you.

20              And we have Officer Seraphin from Probation as well on

21    video.  Good morning.

22              PROBATION OFFICER:  Good morning, Your Honor.

23              THE COURT:  And I understand the Government is asking

24    for a Rule 35.  I'll hear from you, Mr. Emery.

25              MR. EMERY:  Yes, Your Honor.
```

1            And again, thank you.

2            So, Your Honor, the Government is asking for a

3  25 percent reduction and that's based on the substantial

4  assistance that this Defendant provided.  Just by way of

5  background, Your Honor, he was first arrested on domestic

6  Colombian charges in Colombia, and at that time he was -- and I

7  know Mr. Nunez is going to get into this to some extent -- but

8  he provided information to the Colombian government on -- on

9  Colombian cases, but he also provided one sliver of information

10 about the location of a fugitive in a case out of the Eastern

11 District of New York and that individual's name, if I could

12 have one minute, Your Honor -- that individual is Tito Aldemar

13 Ruano Yandun, and that's Y-A-N-D-U-N, also known as Alias Don

14 T.; and he is a high-profile trafficker on the kind of totem

15 pole of drug traffickers in Colombia.  You know, this Alias Don

16 T, is, you know, at the top.  While this Defendant, Mr. Romo,

17 is also an organizer/leader, Don T is above the Defendant who's

18 before this Court.

19            And so what this Defendant did, Mr. Romo, is he

20 provided location information as far as the general area where

21 this defendant was located, and while the United States

22 government had -- was receiving information from various

23 sources as far as where he was located, the information

24 provided by Mr. Romo helped to, you know, corroborate that

25 information and put the Colombian government in the general

1    area.  And Mr. -- and Alias Don T was arrested on a provisional

2    arrest warrant and I think -- I believe has been extradited to

3    the United States.  So based on that, we're asking for 25

4    percent reduction.

5              THE COURT:  I'm sorry.  25 or 45?

6              MR. EMERY:  Defense Counsel and I -- I'm sorry, Your

7    Honor?

8              THE COURT:  25 or 45?

9              MR. EMERY:  I'm sorry.  25.

10             THE COURT:  25.

11             MR. EMERY:  Two, five.

12             Is that in the filing that Mr. Nunez filed with the

13   Court on Friday under seal, he also mentions that this

14   Defendant helped to capture another individual wanted in a U.S.

15   case.  I have confirmed with Mr. Nunez that that is not the

16   case.

17             So Mr. Nunez, you know, I understand why he thought

18   that was the case, but he's in agreement that there has been no

19   confirmation that that's it.  So -- and he's not disputing that

20   at this point.

21             I know Jose -- that his client did provide information

22   to Colombian authorities on that individual, but it did not

23   lead, as far as I know, to this individual's arrest, also known

24   as Josue Adan Lemus Lara, so we're asking for the 25 percent

25   based on what he did for the U.S. case.

1       And there's a number of things that I know Mr. Nunez

2   is going to say, why he should get more, but, Your Honor, that

3   dealt with cooperation that he provided to the Colombian

4   government and not to the U.S. government.  So the only thing

5   that he did for the U.S. government in this case, and again,

6   not only, like I said, Don T is a prolific trafficker, helped

7   to arrest this individual by the name of Alias Don T, therefore

8   we're asking for 25 percent.

9       THE COURT:  So Javier Falla Ramirez received 176

10  months' imprisonment.  What is your recommendation here?

11      MR. EMERY:  Well -- so, Your Honor, that kind of takes

12  us to the objections too.  I don't know if Your Honor wants to

13  go over that.

14      THE COURT:  We have to.

15      MR. EMERY:  Okay.  I'm sorry, Your Honor, was that a

16  yes?  You kind of broke up on me.

17      THE COURT:  Yes, we have to.  We have to address all

18  of the objections.

19      MR. EMERY:  Okay.  Exactly.  Okay, so I first want to

20  start off that, you know, probation, in its calculations and

21  information that was provided in the PSI, you know, and I'll go

22  into this why, you know, probation in some aspects is not

23  unreasonable, but we're asking for the Court to respect the

24  negotiated plea agreement of the parties, but it's important to

25  note, Your Honor, in Mr. Nunez's filed objections on Docket

Entry 145, Your Honor, this case, ah, in this indictment was

built on, in large part, by what are called BlackBerry

messenger exchanges, which is -- it's just a messenger

application that BlackBerry had back in the day, which was once

very popular in Colombia; and it's now been taken over by

WhatsApp, generally.  But -- so the Government built its case

against Mr. Romo and the codefendants primarily on

BlackBerry/WhatsApp exchanges.  And the Government, you know,

works on identifying the person.  Obviously it's a little

different than voice because, you know, you have people who can

recognize someone's voice here, we're trying to identify the

person based on statements that are made in these exchanges.

        So shortly after Mr. Romo's arrival, Mr. Nunez brought

to my attention, which I appreciate that he did, he had some

disputes as far as whether or not his client was the one who

was behind -- who was the one sending these messages with

Mr. Falla Ramirez and others in the indictment.  And we had --

Mr. Nunez and I had very robust discussions.  I was -- I spoke

with the Colombian government, as these were Colombian

government intercepts, and in the end, you know, we could not

get a hundred percent resolution on this particular matter, and

so Mr. Nunez and I, rather than litigate this case and go to

trial, I -- I had informed him that we had, you know, at least

one other witness that put him during the conspiracy about an

attempted shipment to Central America.  And so that's primarily

1      based off of what this conduct is based on, which he pled to

2      during the indictment.

3              So with respect to the PSI, Your Honor, with the

4      conversations that and the paragraph that Mr. Nunez indicated,

5      I would agree in that, you know, when his client says that it

6      was not him talking Mr. Falla Ramirez, you know, while, like I

7      said, the Government is not a hundred percent certain that is

8      correct, the Government is not a hundred percent certain that

9      he's incorrect.

10             So again, the PSI will just need to be corrected.  And

11     like I said, Your Honor, Mr. Nunez is not disputing the fact

12     that his client did attempt to send shipments of cocaine during

13     the conspiracy, he just wasn't successful in doing it.  And

14     Mr. Nunez also is in agreement that in some months predating

15     the charged conspiracy, which was on or about December 2016,

16     that his client was involved in sending cocaine to Central

17     America, ultimately to the United States.

18             So -- so as far as where Your Honor wants to start, in

19     that one load, Your Honor, which, the United States has at

20     least one witness on, dealt with about 300 kilograms of

21     cocaine.  So therefore, the parties at the change of plea

22     hearing informed the Court that we would recommend that the

23     amount of cocaine be between more than 150 and less than 450

24     and that the Defendant should be given a two-points

25     organizer/leader enhancement.

1          So, Your Honor, where that puts him, then, on the

2     guidelines would then be he starts at a Level 36, two points

3     for organizer/leader and then three points for acceptance,

4     which puts him at 135 -- I'm sorry -- 35 on the guideline range

5     to 168 to 210.  And then the Government would ask for 25

6     percent off the low end of that, Your Honor, which I will tell

7     Your Honor is 42 months off of 168, which would be 126 months,

8     Your Honor.

9          THE COURT:  So both you and the Defendant agree that

10     the Presentence Investigation Report's total offense level

11     should be modified, the Pages 10 and 11, the offense level

12     computation require modification, correct, Mr. Emery?

13          MR. EMERY:  Yes, Your Honor.

14          THE COURT:  And Mr. Nunez, are you in agreement with

15     Total Offense Level 35, or no?

16          MR. NUNEZ:  Yes, Your Honor, we are in agreement.

17          THE COURT:  All right.  So Officer Seraphin, I would

18     ask you to make those changes to the Presentence Investigation

19     Report at pages 10 and 11.

20          PROBATION OFFICER:  Okay, Your Honor.

21          THE COURT:  Thank you.

22          Thank you, Mr. Emery.

23          Mr. Nunez.

24          MR. NUNEZ:  Thank you, Your Honor.  Your Honor, given

25     that I'm socially distance six feet, can I remove the mask to

1   speak?

2          THE COURT:  Why don't you stand over there, then, at

3   that table, and that way you stand even farther from us.

4          MR. NUNEZ:  Yes, ma'am.  Sure.  Thank you, Your Honor.

5          I'd like to first address the issue with regard to

6   Mr. Josue Adan Lemus Lara, who I represent in my sealed motion

7   that Mr. Jilon Romo provided information which led to his

8   capture.  That was done in good faith.  I apologize, I spoke

9   with Mr. Emery, he clarified for me that he was unable to

10  confirm that, as I don't want to be redundant, but that's the

11  case.  But I've dealt in good faith and that was an oversight.

12         I presumed that because he proffered and the man was

13  captured, that was the case.  Nevertheless, he did proffer on

14  that gentleman.  And we can confirm that.  He did it with

15  others in Columbia.

16         Mr. Jilon Romo finds himself in a very unique and

17  unfortunate position, Your Honor.  Mr. Emery stated, and he's

18  correct, that, as Your Honor knows in my sealed motion, he was

19  originally arrested in Colombia on February 22nd, 2017.  Your

20  Honor, I submitted the charging documents in Colombia to

21  chambers via the sealed motion, and that arrest was arising out

22  of acts that occurred -- and this is important for Your Honor

23  to consider -- in April and May of 2016.

24         The day after he was arrested, he immediately accepted

25  responsibility in open court and commenced a long process of a

1    very thorough and detailed exhaustive cooperation with the

2    Government that included not only identifying where Mr. Don T

3    was hiding at the time -- and by the way, to do that, he really

4    had to put himself out there, he was communicating with third

5    parties that knew he was arrested under the guise of something

6    else to try to get that guy's location.  He eventually was able

7    to help them capture him.

8            I attached to the motion, Your Honor, an article, it's

9    a neutral publication, it's a Spanish magazine that references

10   him as one of the primary partners of the Sinaloa Cartel in

11   Mexico.  Mr. Emery, himself, has stated this is a high-profile

12   leader, it's not someone on a parallel level.

13           I don't need to tell you, Your Honor, the kind of risk

14   that's associated with the kind of cooperation that Mr. Jilon

15   Romo proffered.  It's not the typical case where someone

16   arrives in the U.S. and they proffer here, it's just wholly

17   different.  And one of the reasons it's different is because

18   the cooperation occurred in Colombia with Colombian

19   authorities.

20           I know Your Honor is well familiar, as is Mr. Emery,

21   and I gave one or two brief examples in my motion, that

22   Colombian law enforcement, as well as some U.S., have been

23   corrupted and they've given information that they should not

24   give out.  As we stand here today, I have a client in this

25   district whose pending sentencing before Judge Scola for the

1    very same thing, caveat, it wasn't to disclose a witness, it

2    was to inform a perspective target that he should perhaps evade

3    capture because he's on the list.

4            Nevertheless, the list is palpable, it's real.  His

5    wife has already had to relocate in Colombia far away from the

6    family.  It's an eight-hour drive by car.  It's akin to someone

7    moving from Miami to Jacksonville or even Georgia.  And so that

8    is a real risk he has undertaken.

9            And I understand, and he will tell you, Mr. Romo will

10   tell you, Your Honor, this is something brought on to himself

11   by himself.  He accepts full responsibility for that.

12           Having said that, the extent of his cooperation also

13   involved him sitting via video conference with Guatemalan

14   authorities and disclosing everything he knew about a very vast

15   criminal enterprise operating between Colombia and Guatemala,

16   which is essentially what he did is he was involved in that

17   group.

18           The proffer that he gave, Your Honor, led to the

19   capture of various individuals.  For purposes of credit in the

20   U.S., I understand Mr. Emery's position, but these countries

21   are allies in the war against drugs.  Anybody taken off the

22   streets in this illicit business, the U.S. directly benefits by

23   that.

24           And so, while I understand that it's not a

25   consideration for the 5K, I'm asking for substantial variance

1    for that and a few other reasons.  What he did was

2    extraordinary in terms of its breadth and scope, he provided

3    even via proffer to the U.S., a very detailed lengthy

4    explanation of all the individuals involved in Guatemala, their

5    coordinates, where they receive drugs at sea.

6            He's accepted a leadership role.  I'll tell you, he in

7    Colombia, his role in this was, he was a logistics guy, so he

8    knew these things, he proffered all of it.  The unfortunate

9    thing is the U.S. indictment, although it was filed in 2017

10   under seal, he was arrested a year and a half after his

11   Colombian arrest for acts that occurred with the same group

12   about six months after the Colombian acts.  In the usual

13   course, that would be one indictment.  He'd be facing charges

14   here.  Mr. Jilon Romo, however, finds himself returned to

15   Colombia, facing a 15- to 18-year sentence.

16           To be clear, he was not double dealing.  He did not

17   get indicted for acts that he committed while he was under

18   arrest in Colombia.  That is not the case.  I want to be clear

19   about that.  So he's involved in this enterprise in Colombia,

20   he commits -- participates in some shipments in April and May

21   of 2016, and towards the end of that year, coming into the next

22   year, he conspires, because the shipment was never delivered on

23   the load that we're discussing n court today and that Mr. Emery

24   referenced for 300 kilograms.  So when this gentleman finishes

25   whatever sentence Your Honor imposes, he will return there to

1    Colombia and he's facing 15 to 18 years.

2            I brought Your Honor's attention to Section 5G, as in

3    good, 1.3 of the sentencing guidelines.  If I may read, that

4    section provides where "a state" -- meaning a state in the

5    United States -- "term of imprisonment is anticipated to result

6    from another offense that is relevant conduct to the instant

7    offense of conviction...the sentence for the instant offense

8    shall be imposed to run concurrently to the anticipated term of

9    imprisonment."  Now, it doesn't contemplate another country.

10   But it's the converse.  We know he will face a sentence there

11   and I'm asking that Your Honor, for purposes of justice and

12   reasonableness, take into account what is awaiting him over

13   there.  This is a real fact of his life.

14           I've spoken to his lawyer as recently as two days ago

15   in Colombia, nothing has changed and I don't foresee how it

16   could ever change.  They are coming down extremely hard on him

17   despite his cooperation.

18           Your Honor, he spent total incarceration in the U.S.,

19   he arrived in the U.S. -- excuse me, one second.

20           THE COURT:  How --

21           MR. NUNEZ:  Yes, ma'am.

22           THE COURT:  How would I take into account and have my

23   sentence run concurrently with a sentence that has yet to be

24   imposed in Colombia?  I don't know how you would have me do

25   that, Mr. Nunez.

1           MR. NUNEZ:   I appreciate the concern.  I share it with

2    Your Honor.   However, while you can't precisely calculate how

3    to deduct one from the other, we know he's charged there, he's

4    pending sentencing and the guideline provisions said in

5    anticipation.   So even the guidelines recognize that you may

6    not have -- one may not have certainty as to what to expect

7    from the forthcoming sentence, but I submit, Your Honor, it's

8    between 15 and 18 years.  Mr. Emery will tell you I discussed

9    with him -- frankly he has a better understanding of their

10   system than ours, that that can be reduced with coercions,

11   etc., like our system provides variances and perhaps RDAP and

12   other programs that allow one to reduce one's sentence, but

13   starting, it's 15 to 18.

14           So whatever he gets here, he's going to get more

15   there.   And when we look at the history of sentences kind of

16   down this district, you know, the harshest of the harshest,

17   Diego Estrova (phonetic) received 30 years.  This is a man who

18   was violent and killed hundreds of people, and he got 30 years.

19   Anything even in the 20s is too much time.

20           And so I'm going to get to, if I may, what I would

21   recommend the Court to do, invite the Court to sentence

22   Mr. Romo to.  Mr. Emery recommends a 25-percent reduction.

23   First, I thank him because frankly, the cooperation was not

24   between Mr. Romo and the U.S., it was with Colombia.  But

25   Mr. Emery has taken the position that he appreciates that, he

1    recognizes that it did lead to the man's capture -- or helped

2    lead to it.

3           But I think that 25 is very, very low when given what

4    he did and the risks he took, and the comprehensive cooperation

5    that he has given, although we can't count it for the 5K

6    purposes.

7           I invite the Court to give him a 45-percent reduction

8    for that cooperation.  This is not, again, a regular level,

9    parallel or lateral narcotics trafficker individual.  This is a

10   high -- this is an actual leader of the totem pole as

11   referenced in the article I gave Your Honor.  So I would ask

12   the Court to give a 45-percent reduction for that.

13          If the Court did that, it would end up being not 126

14   months -- let's start at 168 where he's at, Your Honor, and

15   we're doing that again, even though Mr. Emery told you, you

16   know, Your Honor asked about the codefendants.  His position is

17   uniquely different than the codefendants for the reason that

18   Mr. Emery told Your Honor, explained.  And so if we give him

19   the 45 percent, he would be at 65 -- that would be a 65-month

20   reduction, which will leave him at 98 months.  That's where he

21   would be at today.

22          THE COURT:  A 65-month reduction would leave him at

23   103, no?

24          MR. NUNEZ:  He's at 168.  I must have -- can I just

25   get my calculator again?  I'm horrible at math.

```
1            THE COURT:  Of course.

2            (Pause in proceedings.)

3            MR. NUNEZ:  I'm getting that 168 -- well, I'm getting

4   that 45 percent of 168, Your Honor, is 75.6 months.  And we

5   take that from 168, we get 92.4 months.

6            THE COURT:  Oh, all right.

7            MR. NUNEZ:  So that's what 45 percent would be, 92.4

8   months.  He spent a total of 34 months incarcerated, five

9   months in Colombia and he spent in the United States, exactly 2

10  years, 5 months, 11 days as of today.  And so we would ask that

11  he get credit time served for that.

12           In addition, we're asking for a variance.  A

13  substantial variance, and this is where I bring in the fact

14  that we don't know how much time he'll get in Colombia.  It's a

15  number, I just can't even begin to tell you, it's 15 to 18

16  today, but it will be reduced, I'm guessing, through his

17  lawyer's efforts and perhaps he'll get something for

18  cooperation.  In any scenario, Judge, it could be easily ten

19  years, reasonably -- reasonably and realistically.  And so that

20  would be in addition to whatever Your Honor imposes here.

21           I need not tell Your Honor what he's facing when he

22  leaves prison, returns there and he's extradited from the

23  United States -- excuse me, deported.  He will face a life

24  where he will spend the rest of his life having to look over

25  his shoulder for him and his family's well-being and safety.
```

```
 1    And while he brought it upon himself, we cannot deny that his
 2    efforts led to benefits not only here, but in Guatemala and
 3    Colombia in the war against drugs.  And so I would ask for a
 4    36-month variance that would be -- it would be the -- the
 5    reduction, based on his character, on the seriousness of the
 6    offense and all the factors set forth in 3553(a), because at
 7    the end of the day, we can't calculate what the sentence will
 8    be, but I am not asking for an exaggerated amount so that it
 9    washes that sentence over there.
10           He will do realtime there and he will do realtime
11    here, and Your Honor, I have to say, you know, the punishment
12    today is measurably different than it's ever been in our
13    history.  In Colombia, the virus ravaged his patio, the
14    cellblock where he was in.  I visited, not during COVID, but I
15    knew what was happening, I was in communication with the
16    inmates there.
17           When he arrived here, he has spent essentially 23
18    hours a day on lockdown.  Almost every day since he arrived.  I
19    can't begin to comprehend what those conditions would feel
20    like, but I've had the pleasure of meeting with him at FDC.
21    I'm one of the few guys that's been in there, and it's eery,
22    it's like a ghost town.  If there was tumbleweed, it would be
23    tumbling across the visiting room.  There is nobody there.  And
24    when I visit with him, he expresses to me in no uncertain
25    terms, this is excruciating.  It's -- I can't find the words to
```

1    describe it.  That should be taken into consideration by the

2    Court, I submit, and invite the Court to do so.

3         Also, Your Honor, another individual that he proffered

4    on, that again, Mr. Emery tells me his information was not used

5    for the indictment, is the individual that goes by the alias

6    Rambo, and that is an individual, that's a codefendant in the

7    indictment and he's a FARC commander who was one of the persons

8    responsible for the -- a scheme where he would offer

9    individuals who were subject to extradition to the United

10   States, to pay a sum certain, to have their name put on a list

11   as a FARC member and that would thereby, based on the Colombian

12   justice and peace law, allow them to avoid extradition.

13        That offer was made to Mr. Jilon Romo; he declined it.

14   Mr. Emery asked me if he would proffer any information on that.

15   I offered it to him, it wasn't used for indicting purposes, but

16   I will submit, Your Honor, I personally visited him in Columbia

17   in his prison, he was in the same yard as Rambo was.

18        And so, you know, the pressure that he faced on a

19   daily basis from this gentleman, he shared it with me, it's

20   real as well.  We don't know if Rambo will ever come here or

21   not, we don't know if they will ever discover it, but this man

22   has done everything anyone can ever expect of him in terms of

23   his cooperation.  He's given everything he has in information,

24   he's not -- zero violence in his history and no criminal

25   history at all.  He has made a horrendous mistakes, several of

1    them, all lapses in judgment.  He's a decent man.  I've spoken

2    with him countless times over the past two years and with his

3    wife.  It's not an excuse, he comes from less than nothing.  He

4    will tell Your Honor, today that if he could go back and tell

5    his friends and family in that small county where he's from,

6    it's not worth it.  It's easier said than done now, but when

7    they're starting there, I -- it's a story that I'm sure Your

8    Honor has heard many times, and it's not an excuse, it's just

9    their harsh reality.

10            Given everything that we know about his life and what

11   he's done and the predicament in which he finds himself, where

12   he's going back and facing substantial charges, I don't think

13   anybody is going to dispute that.  Mr. Emery may dispute the

14   time and harp on the fact that we just don't know how much

15   time, which is why I think a variance of 36 months is fair and

16   just and reasonable in this time.  And I submit that with all

17   the respect and deference that Your Honor deserves, but given

18   what he's facing, I haven't had a case like this, and I've

19   researched cases to find one with similar facts that I could

20   perhaps give Your Honor to go off of, I found none.

21            I've spoken with a number of colleagues about it, no

22   one can find a case like this that I could ever bring to Your

23   Honor's attention and have you consider it as not precedent,

24   but perhaps a case that -- an exemplary case.

25            Having said that, Your Honor, I would ask that Your

1 Honor, given the 36-month variance, which would essentially put

2 him at a total, we were at 92.4 minus 36 would put him at 56.4.

3 I am asking for time served.  If Your Honor is not inclined, I

4 would ask for the 45 percent 5K downward departure and then a

5 36-month variance, based on all the reasons I've submitted

6 today and in my motion.

7    Mr. Jilon Romo would like to make a brief statement,

8 if you would allow him.  Thank you, ma'am.

9    THE COURT:  Well, you're asking for time served in any

10 event, correct?

11    MR. NUNEZ:  Yes, but what I meant was I'm asking for

12 your sentence to be time served.  That's it.  If you're not

13 inclined, Your Honor, then I would ask for what I said, the 45

14 percent.  Thank you.

15    THE COURT:  And to be clear, what is the amount of

16 time served?  You indicated he'd served two years and some?

17    MR. NUNEZ:  In the U.S. it's two years, five months

18 and 11 days, and in Colombia it was 5 months, because he was on

19 house arrest for a period over there while he was cooperating.

20    MR. EMERY:  So Your Honor, that's a point I wanted to

21 clarify.  He was served with his provisional arrest warrant on

22 this case on July 3rd, 2018.  And the U.S. government made the

23 diplomatic assurance to the government of Colombia that he

24 would receive credit from that day.  So we're asking the Court

25 from that day.  So any time before that, Your Honor, is on this

1    Defendant.  I mean, he's -- you know, he's only being held

2    accountable here for, you know, for a small amount of cocaine,

3    for the 300 or so kilograms and, you know, the Colombian case

4    predates what we're talking about here.  And so Colombia is

5    holding him accountable for that.

6           So -- so, Your Honor, at some point I'd like to

7    respond to what Mr. Nunez said.  I don't know if you want to

8    hear from me now or after the Defendant speaks.

9           THE COURT:  Why don't we hear from you now.

10          MR. EMERY:  Okay, Your Honor, just briefly.  So, Your

11   Honor, I think Your Honor understands that, you know, we can't

12   speculate what's going to happen in Colombia.  And as Mr. Nunez

13   points out, Your Honor, I was the judicial attache in Columbia

14   for five years, so I know a little more about the Columbian

15   judicial system than most, and they get significant reductions

16   for time that they study.  So any sentence they get, they

17   pretty much knock off 50 percent of that, they get five, zero

18   off if they study, work.  And then I also spoke with the

19   prosecutor in this case and, you know, they believe that he's

20   also going to get a reduction for his cooperation in that.

21          So -- and again, that's all conduct that preceded the

22   indictment before Your Honor and so he needs to be held

23   accountable for that.  And the only reason why Mr. Romo is in

24   this position is because of what he did.  This is not a guy who

25   just sent one load, and Mr. Nunez is pointing out, that he has

1   this Colombian case where he did traffic in a lot of cocaine.

2          But I'm not asking this Court to enhance him here for

3   that as far as a relevant conduct, because I recognize that

4   he's going to have to answer for that in Colombia.  So I think

5   it's important to note the demarcation.  And that's why he was

6   charged with the indictment period that he was here rather than

7   before, because Colombia would not have extradited based on

8   double-jeopardy grounds if he was going to be punished twice

9   for what happened in Colombia.

10         So, what's going to happen in Colombia, he has to

11  answer for, and I would just ask the Court not to take that

12  into consideration and give him credit.  Those arguments will

13  have to be made before a Colombian judge.  So I'm only asking,

14  and I think the Court should only take into account, what's

15  before this Court, and that's -- that's the 25-percent

16  reduction.

17         And with respect to the arguments that he said about

18  alias Rambo, he may or may not be here one day before this

19  Court.  And if the information provided by Mr. Romo can be used

20  on the line, then we'll be happy to go before this Court and

21  ask for a Rule 35 at that point.  But Mr. Romo's information

22  was not used at any point against Mr. Rambo.  So while he

23  provided us information, it's premature also for this Court to

24  consider.

25         So, Your Honor, I think a sentence of 126 months would

1    be more than fair, given who this Defendant is, and that's what

2    the Court would ask for -- I'm sorry.  What the Government

3    would ask for.

4              MR. NUNEZ:  I'm sorry.

5              THE COURT:  Thank you.

6              Yes, Mr, Nunez.

7              MR. NUNEZ:  I just want to be clear about the

8    prospects for a future reduction.  Mr. Emery and me have an

9    agreement that if he should sit as a witness in a trial, he

10   would get a Rule 35 -- correct me if I'm wrong, Mr. Emery --

11   short of that, there's nothing coming down.  Your Honor

12   understands I can't give you a number.  Less than 1 percent of

13   these cases go to trial, our reality is for this gentleman is

14   today is the day where he will get his reductions.  You know, I

15   haven't seen a case from Columbia go to trial here in I don't

16   know how long.  And so I just want Your Honor to take that into

17   consideration that it's not a case where he'll get a Rule 35 if

18   his information leads to something.  He needs to sit in a

19   trial, in a jury for that to happen.

20             And again, I just want to emphasize the guidelines,

21   the 5G1.3, where it takes into account that unknown

22   anticipatory sentence, and again, the fact that these acts for

23   which he's been indicted are six months apart.  In the usual

24   course, there would be indictment.  Whatever the Government did

25   to get him over here, based on acts six months later, that's

between the governments, but his reality and his life on the grounds here on Earth is he's facing substantial time for an ongoing participation in acts that in the usual course would be one indictment here and nothing waiting for him back home. Thank you, Your Honor.

THE COURT:  Thank you.

Mr. Romo, I'll hear from you now.

THE DEFENDANT:  Good morning, Your Honor.  Good morning, Your Honor.  I am very thankful for this opportunity to express myself.  I am very thankful for this opportunity to express myself before this honorable Court.  Nothing that I say today will change the damage caused by what I did.  However, I consider that it is important when a human being acknowledges his or her mistakes, and in addition to that, doing everything that that individual can do to then turn that damage into help.

This is the same topic that my attorney has explained to you, Your Honor.  I have done everything that is humanly possible to erase the damage that I caused.  I understand that I am here because of what I did and the bad decisions I made.

The guilt is mine and only mine.  But I have paid a high price for my bad decisions, bad decisions that I made because I did not have good opportunities.  Knowing what I know today, I will tell anybody that is at the verge of -- of getting into this lifestyle that there is no amount of money that can repair the damage that we caused and that we too

1    suffer.

2           I know that at some point I will be free, but because

3    of my cooperation, for the rest of my life I would like -- I

4    would be living without peace because I know that the people

5    that I turned out, they will not rest until they do know who

6    really brought them out into the light.

7           My wife has already had to move to a town far away

8    from her family, and what really hurts one the most is that if

9    anything happens to her, that would be my fault.  I do ask you

10   to take this into consideration in addition to what my attorney

11   presented before you today on the charges that await me in --

12   await for me in my country.  I trust that your decision will be

13   fair.  Thank you very much, Your Honor.

14           THE COURT:  Thank you very much, Mr. Romo.

15           So to summarize the attorneys' discussions with me

16   regarding your sentencing, again, our advisory guidelines

17   recommend a sentence of between 168 to 210 months'

18   imprisonment.  The Government has filed a motion for a 5K

19   sentence reduction to recognize your significant cooperation,

20   valuing that cooperation at 25 percent.  In contrast, your

21   attorney has assigned a value of 45 percent to the substance of

22   the cooperation you've provided.

23           In sentencing you for your offense conduct, I

24   consider, of course, this cooperation.  I reduce any term of

25   imprisonment that I would have imposed to reward you for the

cooperation.  I also consider your personal history and
characteristics, and in that regard, take into account the fact
that you are imprisoned now under unduly harsh circumstances,
will continue to be suffering those harsh conditions, and upon
completion of your imprisonment term here, will be returned to
Colombia to face additional time there and additional
confinement under harsh circumstances.

I note the sentences received by codefendants in order
to try to avoid unwarranted sentencing disparity.  I note that
the sentence I impose should promote respect for the law and
serve to deter you as well as others from engaging in similar
conduct.  Having given due consideration to all of those
factors, it is the judgment of the Court that you are committed
to the Bureau of Prisons to be imprisoned for 80 months as to
Count 2, eight, zero.  I find that you're not able to pay a
fine, therefore, no fine is imposed.

Upon release from imprisonment, you will be on
supervised release for five years as to Count 2.  Within 72
hours of release, you will then report in person to the
probation office in the district to which you are released.
While on supervised release, you will comply with the mandatory
and standard conditions of supervision.  Those include not
committing any crimes, being prohibited from possessing a
firearm or other dangerous device, not unlawfully possessing a
controlled substance and cooperating in the collection of DNA.

```
 1              You will also comply with the following special
 2    conditions:  You will surrender to immigration for removal
 3    following imprisonment and you must pay the United States a
 4    special assessment of $100 as to Count 2.  To be clear, you are
 5    receiving credit for all time that you have served since
 6    July 3rd, 2018.
 7              Now that the sentence has been imposed, does the
 8    Defendant or his attorney object to the Court's findings or the
 9    manner in which the sentence was announced?
10              MR. NUNEZ:  No, Your Honor.
11              THE COURT:  Mr. Romo, you have the right to appeal the
12    sentence.  Any notice of appeal must be filed within 14 days
13    after entry of the judgment.  If you're unable to pay the cost
14    of an appeal, you may apply for leave to appeal in forma
15    pauperis.
16              Are there any counts that need to be dismissed,
17    Mr. Emery?
18              MR. EMERY:  Yes.  The Government would move to dismiss
19    the remaining counts in the superseding indictment, Your Honor.
20              THE COURT:  Those counts are dismissed.
21              Officer Seraphin, any questions?
22              PROBATION OFFICER:  No, Your Honor.
23              MR. NUNEZ:  Your Honor, may I have a moment to speak
24    with him --
25              THE COURT:  Of course.  Yes.
```

1          MR. NUNEZ:  -- because he'll be in solitary.  Thank

2     you so much.

3          (Pause in proceedings.)

4          MR. NUNEZ:  Thank you, Your Honor.

5          THE COURT:  Mr. Romo, good luck to you and to your

6     family.

7          THE DEFENDANT:  Thank you, Your Honor.

8          THE COURT:  And I thank our interpreter for coming in.

9     Thank you, so much.

10         THE INTERPRETER:  You're welcome, Your Honor.

11         MR. NUNEZ:  Happy holidays to Your Honor.

12         THE COURT:  You as well.

13         MR. NUNEZ:  And to Mr. Emery as well.

14         THE COURT:  You all have a good day.

15         Nice to see you, Mr. Emery.

16         Officer Seraphin.

17         PROBATION OFFICER:  Take care.

18         MR. EMERY:  Thank you, Judge.

19      (The proceedings concluded at 10:25 a.m.)

20

21

22

23

24

25

1

## C E R T I F I C A T E

2

3     I hereby certify that the foregoing is an

accurate transcription of the proceedings in the
4

above-entitled matter.
5

6

7   _12/21/20_            _Stephanie A. McCarn_
        DATE          STEPHANIE A. McCARN, RPR
8                      Official United States Court Reporter
                       400 North Miami Avenue, Twelfth Floor
9                      Miami, Florida 33128
                       (305) 523-5518
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25